Mr. Raymond, you've already learned more than you ever wanted to know about Apple and Motorola. I was honored to be here. I won't be as lengthy as they will. Hopefully the chief won't let you. We'll have just as many questions. I think I'm going to have to answer for something when we get behind the wall there. Good morning, may it please the court. My name is Sean Raven and I'm here on behalf of Lorenzo Zellner. No person shall be deprived of life, liberty or property without due process of law. This court has issued two decisions, Cushman, Edwards, actually more than that, Singleton and Charles, which are relevant to our discussion today. The Department of Veterans Affairs deprived Mr. Zellner of property without due process of law when it failed to notify him of his right to appeal a denial of disability benefit. If the board and the Court of Veterans Claims is correct that Mr. Zellner abandoned his claim, is there still a due process problem? Our argument would be that yes, there would be because due process... Well, if he himself voluntarily gives up, abandons, disregards, no longer acknowledges his claim, does he have a property interest in it still? I believe he does, Your Honor, because I've read your dissent in Edwards and I've also read the opinion of Cushman. And as far as I can tell, Mr. Zellner still has a property interest because he filed a claim for VA disability benefits. He is a veteran, he's a combat veteran of Vietnam and he claimed to be entitled to compensation for psychiatric disorders. But if you don't have the right to appeal, abandonment of a claim, then how can there possibly be a property interest in the right to appeal if there is none? I mean, are you saying... I'm not clear. Well, first off, Mr. Zellner is asking this Court to take account of the facts and find that he didn't abandon his claim and that actually... Well, do you get to review that fact-finding? I understand we might have jurisdiction over constitutional claims, but notwithstanding that we have jurisdiction over that question, does that mean we can just go and redo the fact-finding, too? I believe you have to, Your Honor, because otherwise if we don't redo the fact-finding, then the Department could say that someone abandoned their claim without ever reaching judicial review. In this case, Mr. Zellner... Well, we assume a presumption of regularity, too. We're not operating on the thing that the Veterans Administration is going to sort of just do that disingenuously to avoid having appeals, right? Actually... We can't operate that way. Actually, I would point out there are two places in the record where it didn't indicate that he did abandon the claim. And you would get an appeal. You'd get an appeal to the Court of Veterans Claims after the Board made an incorrect finding. You can appeal the finding to the Veterans Court. Right. You just can't appeal it on here. Isn't that the way the system works? For... but not for constitutional... You'd get an appeal. You'd get an appeal, but... Your jurisdiction is to review the U.S. Court of Appeals Veterans Claims. However, you have the right also for constitutional questions to review the facts. Yeah. Well, that's what I'm wondering, if that's correct. I'm kind of asking the same question that my colleague asked you a moment earlier. Well, for due process... Do we get the facts even on constitutional cases? Absolutely. I believe so. Under 7292, I think that your jurisdiction is clear. You get to do fact-finding. So once we have jurisdiction over the claim, then we get to review. Under what standard do we review the fact-finding then? It's de novo. It's not deferential. It's de novo. You have de novo review over questions of fact and constitutional questions. And that's how it should be in order for you to take a look at this under the constitutional question of due process. But do you agree? Let's assume that's all we agree, and we make a determination on the record. We review de novo determination, and we agree with them that it was abandoned. Do you then abandon your constitutional claim? Well, hypothetically, if you find that it was abandoned, then I think that you would also... Our argument would be under no. The answer is strictly no, because even under abandonment, we believe Mr. Lorenzo Zellner should have received notice of his right to appeal that determination that he had abandoned his claim. Again, he gets the process that you do, not unlimited process. And the process he gets is the right to appeal that finding that's made by the board to the Court of Veterans Claims. Is that the process he's due, therefore due process? Not enough due process. The process that he's due is the right to notice of his right to appeal. When his claim was denied in 1971, he had the right to receive notice of those appellate rights. His claim was denied in a letter on record site, page 200 of the joint appendix that says, we have denied your claim. On record site 174, the VA's own rating decision says, we denied your claim. If you deny those, denial leads to the right to appeal. He didn't receive notice of his right to appeal, and that's the due process argument. Later on, after he had established entitlement to service connection for a psychiatric disability, he filed an appeal. He received appellate rights, and he filed notice of appeal with the effective date assigned. And he filed that appeal, and at that point, the board issued a decision after a couple times saying that, well, he had abandoned his earlier claim. That was the first finding of fact. That finding was reviewed by the Veterans Court, and they found that he had abandoned his claim. However, he has the right to due process because even a determination of abandonment gives someone the right to notice of appeal. He never received notice of his right to appeal. In other words, the way that this is a miscarriage or a violation of his due process rights is that when they determined that he had abandoned his claim, they never informed him that he had the right to appeal that. On what basis do you formulate an appeal when they offered him an examination, and he failed to show up for the examination? On what basis was he going to appeal it? Well, he could appeal any time, anything. For example, if he showed up for the examination, but he left, I'm in a situation where he's a combat veteran, he comes back to the VA, he shows up to the waiting room filled with veterans without limbs, he's got 100% PTSD, and he leaves. He's not able to stay there. He leaves. And so the question is, if he doesn't go to the examination and they deny his claim, does he have the right to appeal? Yes. He has the right to appeal that, and then once he files a notice of disagreement, they have to issue a statement of the case saying, well, you failed to appeal, and this is what the evidence needs to show in order for you to be granted service connection for PTSD. The facts of this case show that when he filed his claim 30 years later again, they denied that. And then when he received that rating decision, he filed an appeal, and when he received the denial, the denial explained what was missing, what evidence was needed, and then he was able to correct that and provide necessary evidence in order to be granted service connection. So the denial is very important, not because, well, yes, he didn't show up, he didn't have the examination, but the denial is important because it allows him the process of finding out what information or evidence is necessary to decide the claim and what he can do to rectify that. That's the whole process. Didn't he receive a notice in January telling him that his claim would be reconsidered if he subjected or if he underwent an examination? Yes. He received two notices. One is from December of 1971 and January of 1971. Why doesn't that satisfy his right to due process? Because due process, what we're looking for, what he was looking for, is the right to appeal that decision. We have denied your claim. When he received notice on page 200 of the checkbox that says, We have denied your claim, he had the right to notice of appellate rights, and appellate rights would have allowed him to file a notice of disagreement. Every time that Mr. Zillner was given his notice of his appellate rights, he's filed an appeal. Every time. There hasn't been a single time that he was given notice of his appellate rights that he didn't appeal. And every time that he's appealed, he has either been successful and prevailed, or he's received additional appellate review. So what remedy are you seeking here? We're seeking a reversal with an order, just like in Cushman. In Cushman, we're seeking, as in Cushman, we're seeking a reversal back to the Veterans Court for them to remand back to the board with a remedy to reverse the finding that he didn't receive due process. It's a pending claim that was unadjudicated until it was actually granted. Yeah, but he can't go back 30 or 40 years and do an exam. I mean, they don't have an exam on the record, right, because they didn't have an exam taken. So is it his burden that he's going to lose anyway because he can't show that the examination in 1970 showed that he had the disability right? Actually, no, Your Honor. The record actually has a retrospective medical opinion that we obtained. And on remand last time, it was before the board. The board ordered the— I'm sorry, a retrospective medical opinion. Yes. You mean a current opinion that says this probably goes back 30 years? Yes. Is that it? Yes, Your Honor. We have medical opinions and medical evidence that are in the record that indicate that Mr.— But it's a current examination. It's not a 1970 examination. It's a medical opinion based on the evidence— I understand. Based on contemporaneous evidence and evidence of that time. Okay. So this retrospective medical opinion, which is firmly established in the field, is used very often to obtain benefits for veterans who should have received benefits. For example, in Cushman. In Cushman, you found that veterans have—actually, the court found that veterans have a due process—a right to due process of law. And in that case, the veteran was entitled to receive benefits or at least have the possibility of receiving benefits all the way back to the time that he filed additional evidence for his psych disability. And the only way he could do that is with medical evidence like a retrospective medical opinion. Do you want to save— I recall Cushman was a little different. Do you want to save your rebuttal time, Mr. Raven? Let's hear from Mr. Hawkins. I also recall Cushman slightly differently. There was plenty of contemporary evidence from Mr. Cushman that is not here. Can I just get clarification, because maybe I was just wrong and misspoke when I was questioning your friend, with regard to if there's a constitutional claim, in the connection with that claim, does the government agree that we get to review facts? And the standard— In H-92, it provides an exception that if it's a legitimate constitutional claim, the court is—the normal prohibition on reviewing the factual findings below does not apply. And do you agree that it's de novo, then? Review of the factual— I'm not sure this court's ever commented on that, but I don't have reason to stand here today to disagree with the representation that it might be de novo. Thank you. If there's a finding of abandonment, then do we even get to the constitutional question? That's a very good question, because in order to—we're having a card horse discussion, it seems to me, so far this morning, where the factual finding below is that this was an abandonment claim, and the VA has a process by which it treats abandonment claims. Can we review those facts? No. Well, no, I would say— Are they abandonment? No. And in fact, what I heard this morning was a little different than what I understood the legal theory was. The legal theory, it seemed to me, in the briefing was that this is a—there's sort of a pending claim argument being made, an unadjudicated claim, and Mr. Donner wants this court to apply some of its pending claim jurisprudence to support a retroactive effective date, going back 30 years. But what was found below was that there was an abandoned claim pursuant to VA regulations and guidance, which interprets the VA statutes that existed at the time, and an abandoned claim is different than a finally adjudicated claim pursuant to the way VA does business and did business up until 1990, as we explained in our briefs. Today, this actually probably wouldn't happen. The change to the regulation, a different regulation, 3.655 in 1990, now would have the VA, even in the case of someone walking away from a medical exam, going ahead in, based upon whatever contemporaneous medical evidence exists, issuing a decision, an adjudicated decision, which would contain the 5104 appeal rights that Mr. Donner— What about the January 71 letter that informed him he had a right to appeal? Didn't that reverse the abandonment situation that developed? I would argue, I would suggest that the 1971 letter didn't indicate that he had a right to appeal because there wasn't anything to appeal. He had walked away from the claims development process, and the way the VA interprets its own regulation— It was a denial of a claim. It was a record process denial, which was explained in our brief in an attachment, addendum to our brief, which is the VA adjudication manual, which distinguishes between adjudicated decisions based upon the merits of a case and a record-purpose denial. A record-purpose denial occurs, like in this case, basically the same as abandonment. That's referenced in 3.158 of 38 CFR. When someone walks away and prevents the VA from actually collecting the evidence at that time, VA treats the claim as abandoned. But the individual can come back at any time and reinstitute the claim. He doesn't have to file a new—well, he could file a new claim if it's over a year, but if he comes back within a year and says, I'll have my medical exam, the claim starts right up. And he obtains the benefit of the effective date associated with his original claim should he be awarded benefits. He comes back over a year. He doesn't have to contend with new material evidence rules under 3.156 prior to 5108 being codified by Congress. So there are clear benefits to him in the sense that he doesn't have to go through the rules of trying to disrupt the finality that would be associated with an adjudicative decision that would contain the appeal rights. In other words, I think as was pointed out by Judge Post, what would he appeal to a higher level within the secretary in a situation like this? Nothing. The letter itself in 1970 and the one that followed after he walked out of the examination in 1971 both plainly said that no further action will be taken unless you inform us of your willingness to report for examination. All he has to do is come back and say, yes, I'm going to participate in the claims development process by participating in the examination. The claim then reinvigorated and it's reconsidered by the RO. There's no need to go to the board to tell the RO you did something wrong because the RO hasn't done anything yet. It hasn't acted on the claim in a definitive sense. There's nothing for the board to correct vis-a-vis the RO. It's just that the RO has told the claimant, if you don't participate in the system, and Flotsam Veterans Court case law, and I think you can leave it there, suggesting that this is not a one-way street. Claimants participate in the process. They have to agree, as is required by regulation in this case, to a VA examination. Here's the situation. In 1970, Mr. Zellner submits a claim and he says, I have a physical and a mental disability resulting from my service. The first step that you must establish when trying to determine whether you're service-connected is whether you have a disability. By regulation, the VA has a right to ask for you to come in so that they can ascertain whether you have a disability. If you don't have a disability, nothing that the VA can give you as far as benefits. That's what they did here. Mr. Zellner decided at the time, for whatever reason, and notwithstanding some of the testimony I heard earlier this morning, there's nothing in the record that indicates why he walked out of the medical exam. There's plenty of record evidence that indicates that despite walking out of the medical exam, he continued a relationship with the VA for educational benefits for the next 15 years. He was able to deal with the VA on this one issue, the educational benefits, but for whatever reason decided he didn't at that time want to deal with the VA on pursuing his claim. This is a classic abandonment thing. There's a factual finding below about that. I don't think that the court's general rule that within the confines of a constitutional question, you can look at the facts, is implicated here. I would just conclude by going back, Judge Rainey, to your point. We believe the court doesn't need to go any further than the plain language that's contained on the December and the January 1971 notice. As the Supreme Court said in Matthews, there's time, place, and circumstance with respect to when due process is triggered. At the time, he is in the middle or the very beginning of the claims process. He's at the RO. He decides he wants to walk out of the VA exam. So what does the VA do? They send him a letter and say, we can't go any further on your claim because you haven't agreed to participate in the process. But if you do come in and agree, we'll process your claim and give you a decision. He didn't need any more notice. There's no reason for appellate rights at that point. What he has been provided in dealing with the government agency has been provided with everything he needs to know to resolve his dilemma at the time, which is the claim. And that's what due process is about, not attaching or stapling to a document, a regulatory or statutory notice that has no effect. Thank you, Mr. Hawkey. Mr. Raven, you have four and a half minutes if you need it. I'd like to take exception to what my friend has said for the government and actually state that the letter quite clearly says in January 1971, we have denied your claim. And then following that, in a rating decision dated June 14, 2004, on page 177 of the joint appendix, it says quite clearly, VA rating decision in January 1971 denied service connection for a neuropsychiatric disorder. Quite clearly, Mr. Zellner received notice from VA that his claim was denied, but he never received notice of his right to appeal. The board decision, going back to what you've asked, Judge, is that there's a board decision on record sites 52 through 53 from August 25, 2009, and that's a direction from the board remanding it to the regional office to obtain a retrospective medical opinion. Before the board determined that Mr. Zellner had abandoned his claim, it wanted to develop the evidence to determine whether or not he had PTSD back then, and the evidence was in the record as well. A record purpose disallowance is a disallowance. No matter how you label disallowance, whether it's a secret disallowance, a record purpose disallowance, or a formal disallowance, it's a disallowance. And veterans have the right to due process of law, to have the right to receive notice of their appellate rights. In this case, Mr. Zellner never received any notice of his appellate rights. The board made that as a finding of fact, and the court below also found that he never received any notice of his appellate rights. So the issue is, when VA denies a claim, does a veteran, as a claimant, have the right to receive notice of his appellate rights? That's clearly a due process of law question. This talk about abandonment, about him walking away, about him not providing or appearing for an examination, it's a red herring because his claim was denied. No matter what, for any reason, if he wasn't a veteran, if he didn't like his evidence, it's a denial, it's not abandonment. That's the difference. This can't happen today because VA regulations now say that when someone doesn't show up for an examination, they can no longer say that the claim has been abandoned. The claim now has to get denied with the notice of appellate rights. There's also a case on that as well. It's called Kowalski, I believe it's Kowalski v. Shinseki, it's down below, in which that's exactly the case. They must now receive appellate rights anytime they don't show up for an examination. If, for any reason, VA denies a claim, if they disallow it, they can no longer secretly disallow a claim and never give any notice to the veteran. They have to, by law, give notice. For this reason, Mr. Zellner asks that we reverse the lower court and send this back down to the board with instructions that Mr. Zellner be permitted to present evidence of having PTSD since 1970. Thank you. Thank you, Mr. Raven. That concludes the morning.